# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SH.A., as Parent and Next Friend of J.A.,
a minor child, and S.A., as Parent
and Next Friend of R.A., a minor child,

        Plaintiffs,

vs.                               No.  CV 00-727 JP/DJS-ACE

TUCUMCARI MUNICIPAL SCHOOLS,
THE BOARD OF EDUCATION OF THE
TUCUMCARI MUNICIPAL SCHOOLS,
FELIX R. JIMENEZ, Superintendent of
The Board of Education of the Tucumcari
Municipal Schools, EDWARD ENCINIAS,
KELLY McFARLAND, JOAN DENTON,
REX KIRKSEY and MARCELLO VALVERDE,
in their capacity as members of the Board of
Education of the Tucumcari Municipal Schools,
ERNEST F. DOMINGUEZ, and ALLIE PELAYO,
Individually and as Principal of Granger Elementary
School,

        Defendants.


## MEMORANDUM OPINION AND ORDER

On October 17, 2001 and March 21, 2002, I granted in part and denied in part a motion

for summary judgment filed by Defendant Ernest F. Dominguez, a school teacher accused of

sexually molesting boys in his classes at Granger Elementary School in Tucumcari, New Mexico.

Judgment was granted in favor of Defendant Dominguez on the substantive due process claim

under 42 U.S.C. § 1983 because the alleged abuse did not meet the "conscience-shocking"

standard for substantive due process.  Judgment was also granted on the state tort claims against

Defendant Dominguez contained in Counts I-IV.  Judgment was denied on the equal protection claim under 42 U.S.C. § 1983 against Defendant Dominguez.

This memorandum opinion addresses six pending motions that present questions of supervisory liability and liability of the school system for the teacher's alleged sexual molestation of his students.  Three of the motions relate to the civil rights claim under 42 U.S.C. § 1983 (Count V),[1] and one relates to a claim for violation of Title IX (Count VI).  Two motions concern the state tort claim (Count VII).  The motions are all interrelated in that they rest on the same set of facts developed in the case, and because the legal standards for all the claims are similar.

On August 30, 2001 Defendants Felix R. Jimenez and Allie Pelayo filed a Motion for Summary Judgment on Count V in their Individual Capacities (Doc. No. 119).  On September 7, 2001 Defendants Jimenez and Pelayo filed a Motion for Summary Judgment on Count V in their Individual Capacities Based on Qualified Immunity (Doc. No. 128).  On August 30, 2001 all Defendants except Ernest F. Dominguez filed a Motion for Summary Judgment on Count V Official Capacity Claims (Doc. No. 115).  On August 30, 2001 all Defendants except Dominguez filed a Motion for Summary Judgment on Count VI (Doc. No. 117).  On August 22, 2001 all Defendants except Dominguez filed a Motion to Dismiss Plaintiffs' Pendent State Law Tort Claims (Doc. No. 113).  On September 7, 2001 all Defendants except Dominguez filed a Motion for Summary Judgment as to Count VII (Doc. No. 126).

## A.  Background

Plaintiffs' First Amended Complaint for Personal Injury and Violation of Civil Rights

---

[1]  Count V contains the civil rights claim under 42 U.S.C. § 1983 that was the subject of my previous memorandum opinions.

(Doc. No. 40) alleges common law and civil rights violations arising out of the alleged sexual molestation of two male students, J.A. and R.A., at Granger Elementary School in the Tucumcari Municipal School system, by their teacher Ernest F. Dominguez. The Defendants include Dominguez, the Tucumcari Municipal Schools and its Board of Education, the Board members, the school superintendent Felix Jimenez, and the Granger Elementary School principal Allie Pelayo.

The motions for summary judgment on the federal claims concern Counts V and VI of the amended complaint. Count V alleges that the Defendants deprived the Plaintiffs of their right to equal protection in violation of 42 U.S.C. §1983. More specifically, Count V at ¶57 alleges that the Defendants failed to adequately investigate reports of molestation, and allowed Defendant Dominguez to teach and further abuse Plaintiffs after receiving reports of molestation. Count V also alleges at ¶58 that the Defendants' policy and custom resulted in Defendants' failure to train, supervise, or discipline teachers; and resulted in the Defendants' toleration of student abuse and harassment by teachers. Count VI alleges that the Defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*[2]

The motion to dismiss and the motion for summary judgment on the state tort claim concern Count VII of the amended complaint. Count VII alleges at ¶ 67 that all Defendants except Dominguez had a duty to operate and maintain Granger to keep it free from unsafe, dangerous, and defective conditions, including from an unreasonable risk of harm to the students. It further alleges at ¶ 68 that Defendants knew or should have known that allowing Defendant

---

[2] Title IX prohibits discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Dominguez access to the students at Granger created a dangerous condition on the premises.

### B. Summary Judgment Standard.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Bacchus Indus., Inc., 939 F.2d at 891.

### C. Motion to Dismiss Standard.

In ruling on a motion to dismiss for failure to state a claim on which relief may be granted, the pleadings must be liberally construed, the well pleaded facts must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). A claim may be dismissed only if the plaintiff can prove no set of facts that would entitle the plaintiff to relief. Id.; Conley v. Gibson, 355 U. S. 41, 45-46 (1957).

### D. Count V - Civil Rights Claim.

Because summary judgment was granted to Defendant Dominguez on the substantive due process claim in Count V, there is no viable claim against any of the other Defendants based on a substantive due process theory. The question presented by these motions, therefore, is whether the evidence in the record supports a claim of supervisory liability against the Tucumcari Municipal Schools, Board of Education of the Tucumcari Municipal Schools, and the school officials on the remaining equal protection claim for sexual harassment of students by the teacher, Defendant Dominguez.

### 1. Individual Capacity Claims Against Superintendent Felix R. Jimenez and Principal Allie Pelayo.

Defendants Jimenez and Pelayo argue that they cannot be held liable in their individual capacities under Count V because they are not subject to § 1983 supervisory liability. "[L]iability under § 1983 must be predicated upon a '*deliberate*' deprivation of constitutional rights by the defendant" and not upon mere negligence. Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993). In the context of a sexual harassment case, a deliberate deprivation of constitutional rights occurs when the defendant knew about the sexual harassment and acquiesced in the harassment by refusing to respond to it reasonably. Murrell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1250 (10th Cir. 1999). For a defendant to be found personally liable under §1983 on a custom claim of sexual abuse, the plaintiff must prove:

> (1) that the defendants received notice of a pattern of violations of ... student's constitutional rights to be free of sexual abuse at the hands of the school district's employees;
> (2) That the defendants displayed deliberate indifference to or tacitly authorized the unconstitutional acts;

(3) That the defendants failed to take proper remedial steps; and

(4) The defendants' failure to take proper remedial steps caused the plaintiff's injury.

Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan., 996 F.2d 1035, 1041 (10th Cir. 1993). When acts committed by a person under the supervision of another are the predicate for a claim against the supervisor, the plaintiff must prove the supervisor "actually knew of and acquiesced in the [actor's] behavior." Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995). Constructive knowledge of sexual harassment "requires a showing that the underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of it." Id., 55 F.3d at 491 (internal quotation omitted).

The deliberate indifference standard is a high one -- it requires more than evidence that school officials were "merely inept, erroneous, ineffective, or negligent." Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998). Deliberate indifference requires evidence of "an official decision not to remedy a violation." Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610 (8th Cir. 1999).

When the defense of qualified immunity is raised by a defendant, the plaintiff must show that the unlawfulness of a defendant's conduct was "apparent" in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992). A defendant is not liable in an individual capacity if a reasonable person in similar circumstances would have believed the actions of the defendant to be lawful. Anderson v. Creighton, 483 U.S. at 641. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Defendants Jimenez and Pelayo argue that they did not actually know that Defendant Dominguez was engaged in sexual harassment nor did they have notice of a pattern of sexual harassment or abuse. Defendants Jimenez and Pelayo also argue that they did not acquiesce in Defendant Dominguez's conduct and they were not deliberately indifferent to the constitutional rights of the Plaintiffs because they took reasonable and proper remedial steps once they learned of the rumor about Defendant Dominguez touching boys and received complaints against him.

The undisputed facts indicate that Defendant Pelayo first heard a rumor in late April 1998 that Defendant Dominguez was touching boys and that the touching was either unwanted or inappropriate. Defendant Pelayo relayed this rumor to Defendant Jimenez. Plaintiffs also claim that in late April, a school lunch monitor, Connie Garcia, told Defendant Pelayo that she had seen Defendant Dominguez rubbing a boy's stomach and rubbing another boy's leg. To support this claim, the Plaintiffs refer to Ms. Garcia's voluntary written statement given to the Tucumcari police on May 26, 1998. This document, however, is unsworn and therefore unacceptable evidence for summary judgment purposes under Fed. R. Civ. P. 56(e). *See* Hayes v. Marriott, 70 F.3d 1144, 1148 (10th Cir. 1995). The statement is inadmissible hearsay, Ms. Garcia has not been deposed, and Plaintiffs have not presented a sworn affidavit from Ms. Garcia. The admissible evidence indicates that by the end of April the only information Defendants Pelayo and Jimenez had regarding Defendant Dominguez's conduct was that there existed an unsubstantiated and vague rumor which did not explicitly allege any kind of sexual harassment. At this point, Defendants Pelayo and Jimenez did not know that Defendant Dominguez was engaged in sexual harassment nor could they be found to have received any kind of notice of a pattern of sexual harassment by Defendant Dominguez or, for that matter, within the Granger Elementary School.

As a result of hearing the rumor about Defendant Dominguez, Defendant Pelayo did several things. She circulated a memo to her teachers instructing them not to touch students; she spoke to Defendant Dominguez about the rumor; she had Defendant Dominguez move his desk to a place visible from the classroom doorway; she continued to monitor Defendant Dominguez's classroom;[3] and she addressed the matter of touching students at the April 1998 faculty meeting. Defendant Jimenez approved of these actions. Plaintiffs argue that these actions were insufficient to remedy the alleged sexual harassment. Plaintiffs believe that Defendants Pelayo and Jimenez should have investigated the rumor, removed Defendant Dominguez from the classroom or placed a second teacher in the classroom, reported Defendant Dominguez to the appropriate authorities for child abuse, and called the police. Considering that the April rumor did not provide notice to Defendants Pelayo and Jimenez of actual sexual harassment of students, Defendant Pelayo's actions were reasonably remedial in nature and demonstrated that Defendants Pelayo and Jimenez were not deliberately indifferent to Plaintiffs' constitutional rights and that they did not tacitly authorize any of the alleged touching.

On May 18, 1998, the mother of James M., one of Defendant Dominguez's students, reported to Defendant Pelayo that James told her that on May 15, 1998, Defendant Dominguez touched his buttocks, grabbed the front of his pants, looked down his pants, and held him closely. Defendant Pelayo informed assistant superintendent Wayne Anderson of this incident that same

---

[3] The Plaintiffs deny that Defendant Pelayo continued to monitor Defendant Dominguez's classroom after she learned of the rumor. The Plaintiffs, however, do not present any evidence contradicting Defendant Pelayo's affidavit testimony regarding the continued monitoring except to state that Defendant Pelayo had omitted any reference to the continued monitoring in her deposition testimony. Defendant Jimenez buttresses Defendant Pelayo's assertion about the continued monitoring by stating in his affidavit at ¶ 7 that he instructed Defendant Pelayo "to monitor the situation by visiting [the] classroom on a regular basis."

day.

On May 19, 1998, Adam O., another of Defendant Dominguez's students who attended math and social studies classes taught by Defendant Dominguez, reported to Defendant Pelayo that on May 15, 1998, Defendant Dominguez pulled his shorts away, placed a hand on Adam's buttocks, and pushed Adam towards him. Defendant Pelayo excused Adam from Defendant Dominguez's social studies class but Adam stated he would be comfortable going to the math class.

On May 20, 1998, Defendant Pelayo spoke with Adam's mother and excused Adam from lunch detention with Defendant Dominguez. Later that day, Adam demonstrated to Defendant Pelayo and two other school personnel, including school nurse Rhonda Sparks, how Defendant Dominguez had touched him. Ms. Sparks stated in an affidavit that she has had extensive training in the area of physical and sexual abuse of children, and that she concluded Adam's demonstration did not show inappropriate or sexually related touching.[4] Defendant Pelayo also was skeptical of Adam's allegations based upon her knowledge of Adam. Defendant Pelayo also met that day with Defendant Dominguez and Judy Martinez, the Tucumcari Educational Association union representative. Ms. Martinez advised Defendant Dominguez on ways to avoid touching children in the classroom and being alone with a child. Defendant Pelayo then called Adam's mother to inform her that Adam would no longer be in Defendant Dominguez's classes. Adam's mother told Defendant Pelayo that she had not heard Adam complain about Defendant Dominguez before. That evening, Defendant Pelayo learned that another adult had reported Adam's

---

[4] Plaintiffs object to Ms. Sparks' affidavit because she was not listed as a witness in the Initial Pretrial Report, filed on February 26, 2001. This objection is without merit since the Defendants complied with Fed. R. Civ. P. 26(a) which prescribes the timing for naming witnesses.

allegations to the police.

On May 21, 1998, Adam's mother called Defendant Pelayo. Adam's mother was upset by the fact that the police had been informed of Adam's allegations, because she did not believe Adam was being truthful. Defendant Pelayo followed up the conversation by writing a letter to Adam's mother which acknowledged that both she and Adam's mother felt that Adam possibly misconstrued the facts about Defendant Dominguez's touching. Defendant Pelayo then called James into her office to demonstrate to her, Ms. Martinez, and Ms. Sparks how Defendant Dominguez touched him. Ms. Sparks concluded that James' demonstration did not indicate inappropriate or sexually related touching. Defendant Pelayo also did not believe James' allegations based in part upon her knowledge of James. Nonetheless, at about noon on May 21, 1998, Defendant Dominguez was given written notice that he was being suspended from his employment as a teacher. From May 18, 1998 through May 21, 1998, Defendant Pelayo had kept Defendant Jimenez informed of what was happening with respect to the allegations against Defendant Dominguez.

On May 18 and 19, 1998, Defendants Pelayo and Jimenez first had notice of possible sexual harassment by Defendant Dominguez. However, Defendant Pelayo's previous experiences with Adam and James, Ms. Sparks professional opinion about the boys' demonstrations, and the opinion of Adam's mother quickly dissipated that initial notice of possible sexual harassment. Consequently, Defendants Pelayo and Jimenez cannot be attributed with actually knowing that Defendant Dominguez had engaged in sexual harassment of boys or that there was a pattern of sexual harassment at the Granger Elementary School. Moreover, by keeping Adam away from Defendant Dominguez, interviewing both Adam and James with witnesses present, meeting with

Defendant Dominguez and Ms. Martinez, and swiftly suspending Defendant Dominguez from his employment, Defendants Pelayo and Jimenez did not acquiesce in Defendant Dominguez's conduct and were not deliberately indifferent to Plaintiffs' constitutional rights. In fact, considering the credibility issues surrounding the allegations of James and Adam, the remedial actions taken by Defendants Pelayo and Jimenez were reasonable and proper. In sum, each time Defendants Pelayo and Jimenez received information regarding the touching of students by Defendant Dominguez, they took action that was appropriate and objectively reasonable under the circumstances. Plaintiffs have not come forward with admissible evidence showing that a reasonable jury could find Defendants Pelayo and Jimenez liable in their individual capacities for violating the Plaintiffs' constitutional rights. Defendants Pelayo and Jimenez's motions for summary judgment in their individual capacities will, therefore, be granted.

        **2. Official Capacity Claims and Claims Against School System.** A suit against members of a governing board in their official capacities is, in essence, a suit against the government entity itself. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). To prevail against a governmental entity under § 1983, a plaintiff must prove a constitutional violation resulting from an unconstitutional or illegal policy or custom of the entity. <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 690-91 (1978). A plaintiff may not recover under the doctrine of *respondeat superior* against a governmental entity based on the alleged unconstitutional actions of a governmental employee. <u>Id.</u> at 691.

        In the context of alleged violations of constitutional rights arising from acts of sexual molestation, a policy must represent "a deliberate choice of action with *respect to the subject matter in question*." <u>D.T. by M.T. v. Independent Sch. Dist. No 16 of Pawnee County,</u>

Oklahoma, 894 F.2d 1176, 1189 (10th Cir. 1990). In order to hold a school district liable, a plaintiff must demonstrate that the district's policy constituted deliberate indifference or reckless disregard of the plaintiff's constitutional rights. Id. at 1192.

Defendants contend that the policy of the Tucumcari Municipal Schools is to forbid the harassment by teachers of any student on the basis of sex, to prohibit teachers from engaging in conduct of a sexual nature with any student, to require the mandatory reporting of sexual harassment by school employees, and to suspend or terminate any employee found to have engaged in prohibited conduct. *See* Tucumcari Municipal School District Board Policy Manual, Def. Ex. B, ¶ 5.5 at 121-123. The Tucumcari School Board Policy Manual was available to the teachers at Granger, and they received training concerning issues of sexual harassment, discipline, and supervision. All school officials and school employees received training in investigation or detection of child sexual abuse. Further, Defendant Dominguez was aware of the school policy on sexual harassment, because he was provided a copy of the policy.

Plaintiffs argue that there are genuine issues of material fact as to the adequacy of the Board's policies. They point to evidence that there were other problems during the school year of teachers' inappropriate sexual conduct with students, which put Defendants on notice of the need for new policies. Plaintiffs cite two incidents, both involving teachers in high school. In September 1997 an Industrial Arts Teacher was forced to resign for making lewd comments to high school girls, and in March 1998 a Coach and Special Education Teacher resigned after he was observed holding hands with a high school girl in front of his home. Those two incidents do not raise a genuine issue of material fact that the school's policy and/or training were inadequate. The incidents were very dissimilar from the ones that form the basis for this case, and they were

apparently dealt with swiftly and in an appropriate manner. In <u>Board of County Commrs. of</u> <u>Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397 (1997), the Supreme Court held that county liability was not established by showing that the sheriff knew of a string of arrests for traffic crimes and a crime of violence committed by an officer accused of excessive force. <u>Id.</u> at 401, 414-15. Here, there is no evidence of any prior history of sexual harassment committed by Defendant Dominguez.

Plaintiffs argue that the policy against sexual harassment was inadequate because it was not conveyed to the students. The student manual had no instruction on how to identify or report sexual harassment, and Superintendent Jimenez did nothing to effectuate the policy to encourage students to report harassment. I decline to adopt as a constitutional standard a requirement that school districts inform students about sexual abuse, what it is and how to report it. That is a matter best left to educational specialists. These alleged deficiencies do not amount to deliberate indifference.

Finally, Plaintiffs contend that the Board knew in April 1998 of the complaints that Defendant Dominguez was inappropriately touching his students, yet Defendant Dominguez was not suspended or removed from his classes, no investigation was conducted, Defendant Dominguez's activities were not reported to the police, and Defendant Dominguez was allowed to continue teaching for an additional month during which he continued inappropriately fondling his students in violation of their equal protection rights. As discussed earlier in this opinion, however, there is no evidence that Defendants knew in April 1998 that Defendant Dominguez was sexually harassing the boys in his classes. There was only a vague rumor, to which Defendants responded in an objectively reasonable manner. When more specific allegations

surfaced in late May 1998, Defendants responded by conducting a more thorough investigation and eventually removing Defendant Dominguez from the classroom.

The school district's policy was not so inadequate as to constitute deliberate indifference or reckless disregard of the Plaintiffs' constitutional rights. Defendants' motion for summary judgment on the § 1983 official capacity claim and the claim against the school district itself will be granted.

### E. The Title IX Claim - Count VI.

The School Defendants argue first that the only proper defendant in a Title IX lawsuit is the recipient of federal educational funding, in this case, Defendant Tucumcari Municipal Schools. Consequently, the School Defendants argue that the Title IX claims against the other School Defendants should be dismissed. Second, the School Defendants argue that Defendant Tucumcari Municipal Schools is entitled to summary judgment on Count VI because no school official had actual notice of any Title IX discrimination, and even if there was actual notice, Defendant Tucumcari Municipal Schools' response to that notice was not deliberately indifferent.

A "'Title IX claim can only be brought against a grant recipient [-that is, a local school district-] and not an individual.'" <u>Floyd v. Waiters</u>, 133 F.3d 786, 789 (11th Cir. 1998) (quoting <u>Smith v. Metropolitan School Dist., Perry Tp.</u>, 128 F.3d 1014, 1019 (7th Cir.1997), *cert. denied*, 524 U.S. 951 (1998)). The School Defendants argue that Defendant Tucumcari Municipal Schools is the grant recipient, and therefore, the proper defendant of a Title IX claim. The Plaintiffs do not contest this argument. Accordingly, summary judgment on Count VI will be granted as to Defendants Board of Education, Jimenez, Encinias, McFarland, Denton, Kirksey, Valverde, and Pelayo.

The Supreme Court, in <u>Gebser v. Lago Vista Independent School Dist.</u>, 524 U.S. 274, 292-93 (1998), held that a school district is liable under Title IX for a teacher's sexual harassment of a student if an official of the school district had actual notice of the allegations and then acted with deliberate indifference. An official of the school district is one who has, at a minimum, the authority to institute corrective measures on the school district's behalf. <u>Id.</u> at 290. The Court defined deliberate indifference as being an official decision by the grant recipient not to remedy the violation. <u>Id.</u>

As a preliminary matter, the School Defendants argue that the school official with the authority to institute corrective measures on behalf of Defendant Tucumcari Municipal Schools was Defendant Jimenez, not Defendant Pelayo. "[W]hether a supervisory employee may be viewed as the proxy of the school district depends upon whether the district has delegated to that employee the traditional powers of an employer, e.g., the authority to hire and terminate employees." <u>Baynard v. Malone</u>, 268 F.3d 228, 239 (4th Cir. 2001), <i>cert. denied</i>, 122 S.Ct. 1357 (2002) (citing <u>Rosa H. v. San Elizario Independent School Dist.</u>, 106 F.3d 648, 660 (5th Cir. 1997)). It is undisputed that Defendant Jimenez had the power to make recommendations to the Defendant Tucumcari Municipal Schools regarding the hiring, terminating, suspending, and transferring of teachers. <i>See</i> N.M. Stat. Ann. 1978, § 22-5-4 (1967) (authorizing the superintendent to perform administrative and supervisory functions on behalf of a school board and to make recommendations to the school board regarding the hiring, firing, suspension or transfer of teachers). Defendant Pelayo could not make those kinds of recommendations to the Defendant Tucumcari Municipal Schools. Defendant Jimenez was, therefore, the school district official with the authority to institute corrective measures on behalf of Defendant Tucumcari

15

Municipal Schools.

In April 1998, Defendant Jimenez became aware of a rumor that Defendant Dominguez was touching boys in a way that made them feel uncomfortable. This vague and unsubstantiated rumor is not actual notice of sexual harassment. Moreover, the May 18 and 19, 1998 allegations by James and Adam could have been reasonably interpreted by Defendant Jimenez as lacking credibility. This kind of suspect evidence cannot provide actual notice of sexual harassment.

Even if the April rumor and the May allegations are construed as actual notices of sexual harassment, the Plaintiffs have failed to show that there was an official decision by the Defendant Tucumcari Municipal Schools not to remedy the situation. Defendant Pelayo, with Defendant Jimenez's knowledge and consent, responded to the April rumor by circulating a memo regarding the touching of students, speaking with Defendant Dominguez, making Defendant Dominguez' desk more visible, addressing the touching issue at a faculty meeting, and continuing to monitor Defendant Dominguez's classroom. In May 1998, Defendant Pelayo responded to the allegations of sexual harassment by removing Adam from Defendant Dominguez's presence, investigating the allegations by interviewing both Adam and James in Ms. Sparks presence, and meeting with both Defendant Dominguez and Ms. Martinez. Defendant Tucumcari Municipal Schools then promptly suspended Defendant Dominguez. All in all, the actions by Defendant Pelayo, approved by Defendant Jimenez, do not rise to the level of deliberate indifference to the alleged sexual harassment. Summary judgment will be granted as to Count VI.

**F. State Tort Claim - Count VII.**

A State entity and its employees are immune from liability in tort except as waived under the New Mexico Tort Claims Act, N.M. Stat. Ann. 1978, § 41-4-4(A) (Repl. Pamp. 1996).

Section 41-4-6 of the Act waives sovereign immunity for the tort of "negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building...."  In Count VII Plaintiffs have attempted to bring a state tort claim against all Defendants, except Dominguez, under this section of the Act.  They assert that the conduct of these Defendants falls within this section's waiver of immunity because the Defendants "had a duty to maintain Granger to keep it free from unsafe, dangerous, and defective conditions."  1st Am. Compl. ¶ 67.  They further contend that, "[t]his duty included keeping Granger safe from unreasonable risk of harm to the students" and that "[d]efendants knew or should have known that allowing Dominguez access to the students at Granger created a dangerous condition on the premises."  Id. at ¶¶ 67-68.  Defendants have moved for dismissal of Count VII, asserting that there are no applicable waivers of immunity under the Act upon which relief may be granted.  Defendants have also filed a motion for summary judgment on this claim.

At one time the waiver of immunity under § 41-4-6 was narrowly construed to apply only to circumstances involving a physical defect in a building, see e.g. Wittkowski v. State Corrections Dept., 103 N.M. 526, 530, 710 P.2d 93, 97 (Ct. App. 1985), but New Mexico courts have interpreted the waiver in this section more expansively in recent years.  In Castillo v. County of Santa Fe, 107 N.M. 204, 755 P.2d 48 (1988), the New Mexico Supreme Court extended the waiver to a situation involving a young boy who was bitten by a dog roaming loose on the grounds of a public housing development.  107 N.M. at 206, 755 P.2d at 50.  In Callaway v. New Mexico Dept. of Corrections, 117 N.M. 637, 875 P.2d 393 (Ct. App. 1994), a waiver was found under this section where a prisoner was attacked by prison gang members in a room containing potential weapons.  117 N.M. at 642-43, 875 P.2d at 398-99.

However, New Mexico courts have refused to extend the waiver in the public school setting.  Pemberton v. Cordova, 105 N.M. 476, 734 P.2d 254 (Ct. App. 1987).  In Pemberton, a student brought an action against a school board after being struck by another student on school property, asserting that § 41-4-6 provided a waiver of immunity.  The New Mexico Court of Appeals declined to extend the waiver to include negligent supervision of students, stating that "plaintiff's injuries were obviously not the result of a defect in the premises."  105 N.M. at 478, 734 P.2d at 256.

Even though Pemberton was decided at a time when § 41-4-6 was more narrowly construed than it is today, *dicta* in a more recent opinion, Espinoza v. Town of Taos, 120 N.M. 680, 905 P.2d 718 (1995), indicates that Pemberton is still good law in New Mexico.  In Espinoza, the New Mexico Supreme Court found no waiver of immunity under § 41-4-6 for an injury to a five-year-old boy who fell from a slide at a town-operated summer day camp.  The court in Espinoza referred to Pemberton, noting that it had been decided under the previous construction of § 41-4-6 requiring a defect in a building.  Id., 120 N.M. at 683, 905 P.2d at 721. However, the court declared that if Pemberton were to be decided under the more expansive interpretation, "the holding undoubtedly would not have been different because the critical question is whether the condition creates a potential risk to the general public."  Id.  *See also* Archibeque v. Moya, 116 N.M. 616, 619, 866 P.2d 344, 346 (1993) ("The purpose of Section 41-4-6 is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government"); Leithead v. City of Santa Fe, 123 N.M. 353, 357, 940 P.2d 459, 463 (Ct. App. 1997) (characterizing swimming pool lifeguard services as "so essential to the safety of a

swimming pool that they seem akin to other kinds of safety equipment such as lifelines and ladders, that are fundamental in making the premises safe *for the swimming public*") (emphasis added).

The requirement that a condition create a risk to the general public is not met in this case. Even if it is assumed that in the public school context the general public would consist of the entire student body, Plaintiffs do not satisfy even this narrowed definition of "general public" because they allege only that Defendant Dominguez acted inappropriately toward certain male students in some of his classes. Therefore, I conclude that Plaintiffs have failed to state a claim under § 41-4-6 in Count VII, which will be dismissed under Rule 12(b)(6).

Moreover, even if Count VII did state a valid claim under § 41-4-6 of the New Mexico Tort Claims Act, summary judgment for Defendants would be appropriate on this claim. The most analogous case involving an expansive interpretation of the waiver of immunity under this section of the Act is <u>Callaway</u>. Callaway was attacked by prison gang members in an area that had potential weapons and that was shielded from view by guards. 117 N.M. at 639, 875 P.2d at 395. The court held that the plaintiff had stated a claim for waiver of immunity under § 41-4-6, "because Defendants knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 117 N.M. at 643, 875 P.2d at 399.

In this case, Plaintiffs have not presented sufficient evidence that Defendant Dominguez had a known propensity for sexual harassment of the boys in his classes, or that Defendants knew or should have known that Defendant Dominguez's presence in the school as a teacher with

access to students created a foreseeably dangerous condition to the male students. In other words, if plaintiffs allege that a person is the dangerous condition, the plaintiffs must demonstrate that the defendants knew something about that individual which made defendants aware that the person was dangerous, and that the defendants were aware or should have been aware that the person created a dangerous condition on the premises. The only evidence of Defendants' knowledge that Defendant Dominguez had a propensity for sexual harassment consists of the previously-discussed rumor conveyed to Defendants Pelayo and Jimenez in late April 1998, and the later specific complaints made by two students and a parent during the week of May 18, 1998. The fact that Defendants investigated two students' specific allegations of inappropriate touching in May 1998 and initially concluded that they either were not credible or did not amount to inappropriate or sexually-related touching further erodes the allegation that Defendants knew or should have known that Defendant Dominguez constituted a dangerous condition at Granger. Thus, even if Count VII survived dismissal under Rule 12(b)(6), I would grant summary judgment to Defendants on this claim.

IT IS ORDERED that:

1. Defendants Felix R. Jimenez and Allie Pelayo's Motion for Summary Judgment on Count V in their Individual Capacities (Doc. No. 119) is granted;

2. Defendants Felix R. Jimenez and Allie Pelayo's Motion for Summary Judgment on Count V in their Individual Capacities Based on Qualified Immunity (Doc. No. 128) is granted;

3. Defendants Tucumcari Municipal Schools, the Board of Education of the Tucumcari Municipal Schools, Felix R. Jimenez, Edward Encinias, Kelly McFarland, Joan Denton, Rex

Kirksey, Marcello Valverde and Allie Pelayo's Motion for Summary Judgment on Count V Official Capacity Claims (Doc. No. 115) is granted;

4.  Defendants Tucumcari Municipal Schools, the Board of Education of the Tucumcari Municipal Schools, Felix R. Jimenez, Edward Encinias, Kelly McFarland, Joan Denton, Rex Kirksey, Marcello Valverde and Allie Pelayo's Motion for Summary Judgment on Count VI (Doc. No. 117) is granted;

5.  Defendants' Motion to Dismiss Plaintiffs' Pendent State Law Tort Claims (Doc. No. 113) is granted;

6.  the § 1983 claim in Count V against all Defendants, except Ernest F. Dominguez, will be dismissed with prejudice;

7.  Count VI will be dismissed with prejudice; and

8.  Count VII will be dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE


For Plaintiffs:  M. Clea Gutterson, CIVEROLO, GRALOW & HILL, Albuquerque, N.M.

Counsel for all Defendants except Dominguez:  Jerry A. Walz, WALZ & ASSOC., Albuquerque, N.M.

Counsel for Defendant Dominguez:  Kevin M. Brown, BROWN & GERMAN, Albuquerque, N.M.